QUESTION CERTIFIED.

**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**and**

**International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada, Intervenor-Petitioner,**

**v.**

**TECHNICOLOR GOVERNMENT SERVICES, INC., Respondent.**

No. 85–3876.

United States Court of Appeals, Eleventh Circuit.

Aug. 4, 1986.

Howard E. Perlstein, NLRB, Office of the General Counsel, Elliott Moore, NLRB,

---

Deputy Assoc. General Counsel, Office of the General Counsel, Washington, D.C., for petitioner.

Bernard M. Mamet, Chicago, Ill., for intervenor-petitioner.

James J. Loeffler, Chamberlain, Hrdlicka, White, Johnson & Williams, Houston, Tex., for respondent.

Application for Enforcement of an Order of the National Labor Relations Board.

Before HILL, Circuit Judge, HENDERSON *, Senior Circuit Judge, and LYNNE **, Senior District Judge.

LYNNE, Senior District Judge:

Pursuant to the provisions of 29 U.S.C. § 160(e), the National Labor Relations Board (the Board) has petitioned this Court for enforcement of its order of September 24, 1985, against Technicolor Government Services, Inc. (the Company), reported at 276 NLRB 41. We grant its petition.

For about twenty years, the Company has been under contract with the United States Air Force to provide photographic services to users of the Air Force Eastern Test Range Facility and the Kennedy Space Center in Florida. As required by 41 U.S.C. § 353(d), the Air Force regularly requests bids from those interested in competing for the work. Early in 1984, it announced that the work would be put out for bid. In April 1984, it issued a "request for proposals", formally soliciting the submission of bids within 40 days from companies which had expressed an interest in competing for the work. The Company submitted its bid in August 1984, and on September 31, 1984, it was once again awarded the photographic services contract.

Since 1964, the Company has recognized Local 666 and Local 780 of International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada (the Union) as the collective bargaining representatives of its employees. Both locals administer a single collective-bargaining agreement with the Company.

In early February when Andrew Younger, a representative of the Union and the business manager for Local 780, learned that five or six companies were interested in submitting bids for such contract and that at least one of them was advertising in the newspapers for individuals with the necessary skills required, he determined that the Company's employees and members of his union should obtain and submit applications for employment by the respective bidders. Apparently he had a dual motive. He was seeking not only to ensure continued employment for the Company's employees in the event the Company was unsuccessful in the bidding, but also to increase the chances of Union recognition by any successful bidder.

On February 21, 1984, in a telephone conversation, Andrew Younger advised Harry Van Riper, the Company's Vice President and General Manager, that he proposed to distribute employment applications to the Company's employees for completion and delivery to bidders on the new contract. Understandably, Van Riper protested that such proposal was contrary to the best interest of the Company.[1]

Previously, on February 18, Younger had directed his secretary to deliver Raytheon employment applications to the Union stewards for completion by the Company's employees and return to the Union. These instructions were carried out on the morning of February 21 by use of the Compa-

---

* See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. When Van Riper strongly insisted that he didn't think the completion of employees' appli-

cations for employment by competitors was a good idea, Younger responded that they would not be turned in to competitors until they talked further. It is clear that the Union was not interested in severing any relationships with the Company.

ny's inter-facility mail. Younger did not tell Van Riper that this was going to be done.

Alfred Eugene Matthieu, employed by the Company for some 20 years, was a member of Local 780 and a steward for the Union in Building 44410. Shortly after 9:30 a.m. on February 21, he received approximately 20 blank Raytheon applications in the inter-facility mail, and, pursuant to instructions received from Younger's secretary, between 9:50 and 10:30 a.m., when bench space was not available to him, distributed such applications to employees in other portions of the building,[2] directing them to complete and return them to him as soon as possible.

At around 2:15 p.m., on February 21, Van Riper was advised by Ed Graf, the Company's motion picture supervisor, that he had observed a number of Raytheon applications in a large, unsealed envelope addressed to Local 780 steward, Zan Burton. Thereupon, Van Riper informed the Union's chief stewards that anyone who distributed competitor employer applications would be fired.[3]

The Company had no rule forbidding the distribution of employment applications on work time. When Van Riper was informed at approximately 3:15 p.m. that Matthieu had been handing out Raytheon applications, he directed that he report to his office. When Matthieu admitted that he had distributed applications to the Company's employees for whom he was steward, protesting that he had heard nothing about a rule prohibiting their distribution until around 3:10 p.m., Van Riper angrily directed that he be fired.[4] Matthieu was subsequently given a letter stating that he was "terminated for cause." Adopting the extensive findings of fact made by the Administrative Law Judge, few of which involved credibility choices, and his conclusions of law, the Board found that Matthieu was engaged in Union and protected concerted activity;[5] that such activity under the peculiar circumstances of this case, did not lose its protection as being so disloyal to the Company as to be indefensible and that his discharge was not otherwise necessary to maintain discipline and prevent disruptions of its orderly operations.

In view of the cogent points advanced by counsel for respondent in briefs and oral argument, we have carefully reviewed the record and now hold that the Board's conclusion that Matthieu was engaged in Union and protected concerted activity when he distributed Raytheon employment applications on the Union's behalf,[6] and that the Company violated Section 8(a)(3) and (1) of the Act [29 U.S.C. § 158(a)(3) and (1)], by discharging him because he engaged in that conduct, is supported by substantial evidence and is not contrary to law.[7]

Accordingly, its order is ENFORCED.

2. The Company had previously tolerated infrequent Union activity and distributions on work time.

3. The time of distribution was apparently immaterial to Van Riper. He did not limit his threats that if any of his people handed out applications for competitors on work time they would be fired.

4. There is some discrepancy in Matthieu's version of the discharge interview and that of Van Riper. Matthieu testified that when he went into the latter's office, Van Riper said, "Gene, what is this I hear that you are passing out applications in mass?" Matthieu replied that he didn't know what he meant by "mass" but admitted that he had distributed applications to the employees for whom he was steward. Van Riper angrily responded that he talked to Younger and Mamet (the Union's counsel) and they were "not going to start this crap." Follow-ing Van Riper's direction that he be fired, Matthieu protested that he didn't know anything about a rule against distribution of applications until around 3:10 p.m., and he had passed out the applications that morning. Van Riper responded, "Maybe next time you will think." The ALJ elected to credit his account of what transpired.

5. In characterizing Matthieu's activity as concerted, the Board relied upon its decision in *Meyers Industries, Inc.*, 268 NLRB No. 73 (1984).

6. We explicitly disclaim any intention to fashion a per se rule for determining the disloyalty of employee activities conducted on work time.

7. On its unique facts we find this case plainly distinguishable from *Boeing Airplane Co. v. NLRB*, 238 F.2d 188 (9th Cir.1956), cited by Respondent as the closest analogy, and other cases upon which it relies in briefs.